# IN THE UNITED STATES DISTRICT COURT
# FOR THE WESTERN DISTRICT OF VIRGINIA
# ABINGDON DIVISION

| | |
|---|---|
| JOHN GARREFFA, ) | |
| ) | |
| Plaintiff, ) | Case No. 1:05CV00111 |
| ) | |
| v. ) | **OPINION** |
| ) | |
| LINDA A. MCMAHON, ACTING ) | By: James P. Jones |
| COMMISSIONER OF SOCIAL ) | Chief United States District Judge |
| SECURITY, ) | |
| ) | |
| Defendant. ) | |

*Mary C. Hendricks, Browing, Lamie, & Gifford, P.C., for Plaintiff; Sara Bugbee Winn, Assistant United States Attorney, Roanoke, Virginia, for Defendant.*

In this social security case, I affirm the final decision of the Commissioner.

I

John A. Garreffa ("plaintiff") filed this action for review of the final decision of the Commissioner of Social Security ("Commissioner") who determined that the plaintiff was not entitled to disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act. 42 U.S.C.A. §§ 401-433, 1381-1383(f) (West 2003 & Supp. 2006) ("Act"). Jurisdiction of this court exists pursuant to 42 U.S.C.A. § 405 (g).

My review under the Act is limited to a determination as to whether there is substantial evidence to support the Commissioner's final decision. If substantial evidence exists, this court's "inquiry must terminate," and the final decision of the Commissioner must be affirmed. *Laws v. Celebrezze*, 368 F.2d 640, 642 (4th Cir. 1966). Substantial evidence has been defined as "evidence which a reasoning mind would accept as sufficient to support a particular conclusion. It consists of more than a mere scintilla of evidence but may be somewhat less than a preponderance." *Id.*

The record reveals that the plaintiff protectively filed applications for disability insurance benefits and supplemental security income on February 6, 2004. (R 46-48, 194-96.) The plaintiff alleges that he became disabled on September 1, 2003. The claims were denied initially and upon reconsideration, and a request for a hearing was filed. These claims were denied. Following a hearing to review the plaintiff's claims, an administrative law judge ("ALJ") rendered a decision on August 25, 2005, finding that the plaintiff was not under a disability. (R. at 10-21.) The Appeals Council declined plaintiff's request for review of the ALJ's decision. (R. at 5-7.) The plaintiff subsequently filed an appeal with this court. The parties have filed cross motions for summary judgment and briefed the issues. This case is now ripe for decision.

II

The summary judgment record reveals the following facts. The plaintiff was forty-six years old at the time of the decision of the ALJ. He holds a general equivalency diploma, and he has past relevant work experience as a guard rail installer, truck driver, chauffeur, tree service worker, and stair builder. (R. at 67, 69.) He alleges he became disabled on September 1, 2003, as a result of arthritis, hypertension, depression, and high cholesterol. (R. at 64, 218.) The plaintiff does not contest the ALJ's findings regarding his arthritis, hypertension, and high cholesterol. Thus, it is only necessary to detail the plaintiff's relevant mental health treatment history.

The record indicates that the plaintiff sought no mental health treatment until his attorney suggested he do so in 2004. (R. at 161.) On October 4, 2004, the plaintiff was examined by B. Wayne Lanthorn, Ph.D., a clinical psychologist. (R. at 161-70.) The record reveals that Dr. Lanthorn examined the plaintiff on one occasion and was not his primary mental health provider. Dr. Lanthorn reported that the plaintiff was pleasant and cooperative throughout the examination. (R. at 163.) Dr. Lanthorn noted that the plaintiff was experiencing chronic fatigue, anhedonia, sadness, and listlessness. (R. at 166.) The Weschler Adult Intelligence Scale Third Edition, Pain Patient Profile ("P/3"), and Personality Assessment Inventory were

administered to the plaintiff. The plaintiff obtained a verbal IQ score of eighty-two and full-scale IQ score of eighty-five. These results placed him in the low average range of current intellectual functioning. (R. at 165.) On the P/3 test the results indicated that the plaintiff had a valid P/3 profile. (*Id*.) Dr. Lanthorn concluded that the plaintiff suffered from a pain disorder associated with psychological factors and a general medical condition, mood disorder with major depressive-like episode, anxiety disorder, borderline intellectual functioning, and a global assessment functioning ("GAF") rating of forty-five to fifty. (R. at 168.)

Dr. Lanthorn also indicated that the plaintiff had a poor ability to relate to co-workers; poor ability to deal with the public; poor ability to interact with supervisors; poor ability to deal with work stresses; poor ability to function independently; and poor ability to maintain attention and concentration. (R. at 170.) The plaintiff was also noted to have a poor ability to understand, remember, and carry out job instructions; behave in an emotionally stable manner; relate predictably in social situations; and demonstrate reliability. (*Id*.)

The plaintiff was treated by Marsha Meade, Ph.D., from December 2004 through March 2005. (R. at 183-191.) During this time, the plaintiff reported having low energy, feelings of worthlessness, loss of interest in activities, irritability, and decreased memory and concentration. (*Id.*) The plaintiff was noted to be cooperative

and well oriented, with intact judgment, memory, and insight. (R. 183-84, 190.) On March 24, 2005, the plaintiff noted he was getting more irritable, he had feelings of depression, and was experiencing marital problems. (R. at 183.) Dr. Mead diagnosed the plaintiff with an adjustment disorder with depressed mood and a GAF rating of sixty-three. (R. at 190.) In regard to his daily activities, the plaintiff indicated that he takes short walks, feeds his dog, visits family and friends, shops, prepares meals, goes to church, reads, and listens to the radio. (R. at 79-81.) The plaintiff also stated that he gets along with others and has no difficulty understanding and remembering. (R. at 82.) At the April 26, 2005, hearing before the ALJ, a vocational expert testified that the plaintiff was capable of performing his past work as a chauffeur.

In his decision dated August 25, 2005, the ALJ found that the plaintiff did not suffer from a severe mental impairment. (R. at 17.)


III

The plaintiff argues that there is a lack of substantial evidence to support the ALJ's finding that he does not suffer from a severe mental impairment. The plaintiff argues that the ALJ erred in not having a medical expert testify regarding his mental impairments and by not relying on such testimony in determining his residual functional capacity.

- 5 -

The plaintiff bears the burden of proving he is under a disability. 42 U.S.C.A. §§ 423, 1328(c); *Heckler v. Campbell*, 461 U.S. 458, 460 (1983). To determine whether the plaintiff has adequately proven he suffers from a disability the Commissioner applies a five-step sequential evaluation. This evaluation requires the Commissioner to consider, in order, whether the claimant (1) is working; (2) has a severe impairment; (3) has an impairment that meets or equals the requirement of a listed impairment; (4) can return to his past relevant work; and (5) if not, whether he can perform other work. If it is determined at any point in the five-step analysis that the claimant is not disabled, then the inquiry immediately ceases. *Bowen v. Yuckert*, 482 U.S. 137, 141-42 (1987). *See* 20 C.F.R. § 404.1520 (2006).

In order to prevail, the plaintiff must show that he is unable to return to his past relevant work because of his mental or physical impairments. *See* 42 U.S.C.A. § 423(d)(2(A).

In this case, the ALJ determined that the plaintiff was not prevented from returning to his past relevant work by his physical and mental impairments. However, the plaintiff contends that the ALJ erred in determining that his mental impairments were not severe. He does not dispute the ALJ's finding in regard to his physical impairments.

- 6 -

Case 1:05-cv-00111-JPJ-PMS   Document 14   Filed 02/21/07   Page 6 of 12   Pageid#: 51

From my review, I find that there was substantial evidence in the record to support the ALJ's finding that the plaintiff did not suffer from a severe mental impairment. "An impairment or combination of impairments is not severe if it does not significantly limit your ability to do basic work activities." 20 C.F.R. § 404.1521(a) (2006). "An impairment can be considered as 'not severe' only if it is a slight abnormality which has such a minimal effect on the individual that it would not be expected to interfere with the individual's ability to work, irrespective of age, education, or work experience." *Evans v. Heckler*, 734 F.2d 1012, 1014 (4th Cir. 1984) (internal quotation omitted). The record provided a sufficient basis for the ALJ to conclude any mental impairment suffered by the plaintiff was slight.

In this case, the plaintiff did not seek mental health treatment until October 2004, over a year after he claimed the onset of disability. Indeed, the ALJ noted that the plaintiff only sought such treatment after being advised to do so by his attorney.

The plaintiff relies on the assessment made by Dr. Lanthorn to support his claim that he suffers from a severe mental impairment. Taken in isolation, Dr. Lanthorn's findings may well support a conclusion that the plaintiff suffered from a severe mental impairment. However, other evidence existed in the record upon which the ALJ could have properly based his findings as to the lack of a severe mental

- 7 -

Case 1:05-cv-00111-JPJ-PMS   Document 14   Filed 02/21/07   Page 7 of 12   Pageid#: 52

impairment. In particular, competing findings by Dr. Mead and the plaintiff's reported daily activities provided substantial evidence to support the ALJ's decision.

The relevant regulations outline several factors that an ALJ is to consider when weighing a medical opinion. Among these factors are: (1) the examining relationship; (2) length of treatment relationship and the frequency of the examination; (3) nature and extent of the treatment relationship; (4) degree to which evidence supports the opinion; (4) consistency of the record as a whole; (5) specialization of the physician; and (6) other factors. 20 C.F.R. §§ 404.1527(d)(1)-(6), 416.927(d)(1)-(6) (2006). No case law, statute, or regulation requires an ALJ to accord the opinion of a consultative examiner the weight of a treating physician.

As stated above, the court's role in this case is limited to determining whether substantial evidence exists in the record to support the ALJ's findings. Where there is substantial evidence to support the finding below, this court may not substitute its judgment for that of the Commissioner. *See Hays v. Sullivan*, 907 F.2d 1453, 1456 (4th Cir. 1990). In determining whether substantial evidence supports the Commissioner's decision, I must consider whether the ALJ analyzed all of the relevant evidence and whether the ALJ sufficiently explained his findings and his rationale in crediting the evidence. *See Sterling Smokeless Coal Co. v. Akers*, 131 F.3d 438, 439-40 (4th Cir. 1997). The record indicates that the ALJ properly

- 8 -

Case 1:05-cv-00111-JPJ-PMS   Document 14   Filed 02/21/07   Page 8 of 12   Pageid#: 53

analyzed all relevant evidence in the record and explained his findings with sufficient clarity.

The ALJ afforded little weight to Dr. Lanthorn's report because he found it to be inconsistent with the record and internally inconsistent. (R. at 17.) The plaintiff was seen by Dr. Lanthorn on one occasion for a consultative examination. Dr. Lanthorn reported that the plaintiff's GAF was between forty-five and fifty. On the other hand, Dr. Mead found the plaintiff's GAF was sixty-three. The ALJ referred to the American Psychiatric Association, *Diagnostic and Statistical Manual of Mental Disorders* 32 (4th ed. 1994) ("*Manual*") , to evaluate the inconsistent GAF scores found by Dr. Lanthorn and Dr. Meade. Referring to the *Manual*, the ALJ noted that a GAF in the range of forty-five to fifty suggests serious symptoms such as thoughts of suicide and severe social functioning.[1] (*Id.*) In contrast, he noted that according to the *Manual* a GAF of sixty-three suggests only mild symptoms such as difficulty sleeping and depressed mood.[2] (*Id.*) However, he noted that a person with such a

---

[1] The *Manual* states that a score in the range that Dr. Lanthorn found involves serious symptoms such as "suicidal ideation, severe obessional rituals, frequent shoplifting or serious impairment in social, occupational, or school functioning (e.g., few friends, conflict with peers or coworkers.)" *Id.*

[2] The *Manual* describes symptoms falling within this range as moderate and include "flat affect and circumstantial speech, occasional panic attacks." *Id.* The *Manual* also describes persons with such a score as having moderate difficulty in social, occupational, or school functioning. *Id.*

- 9 -

score would generally function quite well. Using the *Manual*, the ALJ found that the a score of sixty-three was most consistent with the plaintiff's testimony and his reported daily activities. The plaintiff's reported daily activities do not contradict the moderate symptoms that the *Manual* describes a GAF of sixty-three as entailing.

Additionally, the ALJ discounted the assessment of Dr. Lanthorn because he was obtained at the recommendation of the plaintiff's attorney and only performed one consultative examination on the plaintiff. The ALJ was entitled to afford greater weight to Dr. Mead's assessment. As the record reflects, Dr. Mead treated the plaintiff from December 2004 to March 2005.

The ALJ also determined that the plaintiff's reported daily activities were not consistent with Dr. Lanthorn's findings. Because the plaintiff admitted that he frequently takes short walks, feeds his dog, visits family and friends, shops, prepares meals, goes to church, reads, and listens to the radio, the ALJ was entitled to conclude that these activities were entirely inconsistent with the GAF reported by Dr. Lanthorn. These activities also do not appear to manifest the presence of a severe mental impairment. The plaintiff's statements that he gets along with others and has no difficulty understanding and remembering also contradicted certain findings of Dr. Lanthorn. (R. at 82.) The record also reflects that the plaintiff exhibited no attention or concentration difficulties during the testing he underwent. (R. at 67, 69.)

The record suggests that the ALJ gave greater weight to the opinion of Dr. Meade, the plaintiff's treating psychologist. Considering the factors outlined by the regulations for weighing medical opinion, the ALJ was not required to accord any weight to Dr. Lanthorn's opinion that the plaintiff was disabled due to mental impairments. Accordingly, there was no need to include any limitation for a mental impairment in the plaintiff's residual functional capacity finding.

The plaintiff further argues that the ALJ erred by not having an expert present at the hearing to testify regarding his mental impairments. There is no requirement in the regulations that the ALJ have such an expert present to testify. The regulations authorize an ALJ to request and consider opinions from medical experts in determining whether a claimant's impairments equal those of any listed impairment. 20 C.F.R. § 404.1527(f)(2(iii) (2006); *see also* § 416.927(f)(2)(iii) (2006) ("Administrative law judges *may also ask* for and consider opinions from medical experts on the nature and severity of your impairment(s) and on whether your impairment(s) equal the requirement of any impairment listed. . . .") (emphasis added). The plaintiff presents no other argument supporting why in this instance an expert was required to be present to testify regarding his particular mental impairments. There was substantial evidence in the record to support the ALJ's decision. The plaintiff's reported daily activities, coupled with the findings of Dr.

- 11 -

Meade, provided substantial evidence to support the ALJ's findings regarding a lack of a severe mental impairment in the plaintiff.

IV

For the forgoing reasons, the plaintiff's motion for summary judgment will be denied, and the defendant's motion for summary judgment will be granted.

An appropriate final judgment will be entered.

DATED: February 21, 2007
/s/ JAMES P. JONES
Chief United States District Judge